The parties are husband and wife, having been married on October 29, 1932. The motivating factor giving rise to the present litigation is the existence of long and continued marital difficulties between the parties who have lived separate and apart since 1943. This is the defendant's second marriage, her previous husband having died in 1930. At the time of her marriage to the plaintiff, defendant was the owner in fee of a dwelling house and lot of land in the Borough of East Rutherford, Bergen County. This property forms the subject matter of the suit. It is claimed by the plaintiff that part of the consideration of the marriage was an oral agreement between him and his wife that she would place title to the property in both the names of herself and plaintiff, so that a tenancy by the entirety would be thereby created. The alleged agreement is not conceded by the defendant. Both parties concede that the issue is solely a factual one. Plaintiff contends that a decree should be made ordering the defendant to complete the execution of a deed dated March 30, 1933, purporting to carry out the alleged intentions of the parties; or, in the event said original deed has been lost or destroyed, that defendant be ordered to deliver another deed to that effect.
The material facts that may be adduced from the testimony are: Following the marriage defendant consulted her attorney, James Ely, in March, 1933, for the purpose of discussing with him the disposition of the real estate in question. As the result of the discussion, Mr. Ely drafted a deed whereby plaintiff and defendant would own the same as tenants by the entireties. The parties then went to Ely's office during the same month for the purpose of executing the deed. The deed was then signed by both parties in Ely's presence. Before taking the acknowledgment Ely explained the effect of the deed to the parties, stating that, if the defendant died first, the property would belong to her husband, and, if he died first, the property would go to the defendant. At this juncture, defendant objected that she did not wish this result, but that on the contrary her desire was that her daughter, Rose (Katula), then a minor, should get one-half thereof after defendant's death. It was then stated by Ely that the deed, as drawn, would not effect such a *Page 384 
purpose. He further explained that the desired result could not be effected by a deed, and that he did not advise that it be done by this means since defendant's daughter was a minor and, having her name on the deed, would tie it up in the event a mortgage might be desired. Defendant then asked how it could be done and Ely replied that it could best be done by the defendant making a will. This course was apparently decided upon and defendant actually did execute a will thereafter on April 5, 1933. Attorney Ely thereupon wrote on the face of the deed words to the following effect, "Not to be used, draw a will leaving one-half to the daughter and one-half to the husband", and retained the deed in his files. The will is not in evidence and it cannot be ascertained from the proofs whether Ely's specific suggestions were adopted. The deed in question was never acknowledged and so far as the testimony appears was never physically delivered to plaintiff.
In support of his contentions plaintiff offered proof that he had paid approximately $1,300, for repairs to the property; performed general work in and about the property such as carpentry and painting and further, that after marital difficulties arose he was offered $300. for a release of his interest in the property. The remainder of the testimony is a long and tortuous discourse concerning the marital differences between plaintiff and defendant. For the purpose of deciding the issue here, a discussion of this testimony is not necessary.
If plaintiff is to prevail, it must be shown that it was the intention of the parties to vest ownership of the property in plaintiff and defendant as tenants by the entireties, and the issue, therefore, is whether such intention was legally effected by a valid delivery of the deed in question. "Equity looks to the intent rather than to the form," or, as sometimes expressed, "equity regards substance rather than form." Pomeroy's EquityJurisprudence, 5th Ed., vol. II, sec. 378. "* * * the principle stated in them is of universal application, that equity always seeks for the real intent under the cover of whatever forms and appearances, and will give effect to such intent unless prevented by some positive and mandatory rule of the law." Id.
See also the opinion of Vice-Chancellor Church, in *Page 385 Montgomery v. Varley, 104 N.J. Eq. 83 (Ch. 1929). The Vice-Chancellor therein said:
"The law in this state as to deeds of this character is clearly laid down by Vice-Chancellor Leaming in the case of Rowley v.Bowyer, 75 N.J. Eq. 80. The learned vice chancellor says, beginning at the bottom of page 81:
"`The delivery of a deed of conveyance of real estate is essential to its validity. Its delivery is a matter of intention, and the acts and declarations of the grantor are evidence of his intention. It is not delivered unless or until it is the intention of the grantor to perfect the instrument and make it presently effective as a conveyance.'"
Applying the foregoing principles to the case at bar it is found that attorney Ely's testimony is clearly to the effect that defendant objected to the purport of the deed when its legal effect was explained to her, and that accordingly the acknowledgment was not taken, nor was there a completed delivery. Considering that the parties speak broken English and are difficult to understand, it seems that the true situation, as shown by Ely's testimony, was a desire on the part of defendant to create an ownership in the property whereby she would remain the owner thereof and upon her death the property would go one-half to her husband and one-half to her daughter, Rose Katula. When it was explained that the deed as drawn would not effect such purpose, defendant clearly indicated her dissatisfaction and refused to go through with the transaction. The many cases cited by plaintiff in support of his contentions are all concerned with the question of intention and a reading of them reveals that the question of a valid delivery of a deed is a matter of intention and that the essence of delivery consists in the intent of the grantor to perfect the instrument, and to make it at once the absolute property of the grantee. Montgomery v.Varley, supra. See also Stockton v. Central R. Co.,50 N.J. Eq. 52 (Ch., 1892), wherein Chancellor McGill discussed the question of intention at length.
The facts as presented do not establish a valid delivery of the deed in question in accordance with the intent of the defendant grantor.
The bill of complaint is dismissed, with costs. *Page 386